**UNITED STATES DISTRICT COURT**
**DISTRICT OF DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal No.** |
| | ) | |
| v. | ) | **Counts 1-4: 18 U.S.C. § 1343** |
| | ) | **(Wire Fraud)** |
| **RUSSEL M. WARE,** | ) | |
| | ) | **Count 5: 18 U.S.C. § 201** |
| Defendant. | ) | **(Bribery)** |
| | ) | |
| | ) | **Count 6: 18 U.S.C. § 641** |
| | ) | **(Theft)** |
| | ) | |
| _____) | | **Forfeiture Notice** |

## INDICTMENT

THE GRAND JURY CHARGES:

1. The "relevant period" for purposes of this Indictment is from in or about September 2013, and continuing through to in or around April 2015. Unless stated otherwise, all events described herein occurred in or around the relevant period.

**I. GENERAL ALLEGATIONS**

    **A. Relevant Government and Government-Related Entities**

2. The United States Department of Veterans Affairs ("VA") is a federal agency that provides a variety of services to eligible United States military veterans, their dependents, and their survivors.

3. The Veterans Benefits Administration ("VBA") is one of three administrations falling under the VA's larger umbrella. The VBA is responsible for administering the VA's programs that provide financial and other forms of assistance. VA benefits include veterans' compensation/disability benefits, veterans' pension, survivors' benefits, rehabilitation and employment assistance, education assistance, home loan guarantees, and life insurance coverage.

### B. Relevant Public Official

4. Defendant RUSSEL M. WARE ("WARE") was a Financial Administration Specialist at the VA's Appeals Management Center ("AMC"), located in Washington, D.C. WARE was employed by the VA from in or about April 2012, through March 2015, when he resigned. His duties included, among other things, the processing of requests for "special payments" to veterans in need who qualified for such financial assistance. Such special payments could issue to a beneficiary for a number of reasons, including when a veteran reported that he or she did not receive a check for monthly VA benefits or when a check was sent to the wrong address. WARE was tasked with preparing the electronic payment voucher for the necessary funds for special payments, and another AMC employee would be required to approve the payment.

### C. Jacqueline Crawford

5. Jacqueline Crawford, charged elsewhere, is a private citizen living outside Washington, D.C. She is a United States military veteran. During the relevant period, Crawford received monthly disability benefits from the VA.

6. Crawford and WARE met in approximately 2003 or 2004, when they served together in the United States Air Force. Over the years they would speak occasionally and communicate via Facebook.

## II. THE SCHEME

### COUNTS ONE THROUGH FOUR
### (Wire Fraud - 18 U.S.C. § 1343)

7. Paragraphs 1 through 6 of the General Allegations section of this Indictment are re-alleged and incorporated as though fully set forth herein.

8. From in or about September 2013, and continuing through in or about February 2015, in the District of Columbia, and elsewhere, the defendant,

**RUSSEL M. WARE**,

and Jacqueline Crawford, charged elsewhere, devised and intended to devise a scheme to defraud the United States, including the VA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### A.  Purpose of the Scheme

9.  It was a purpose of the scheme for WARE to use his official position with the VA to enrich himself and Crawford through fraud by directing unauthorized VA special payments to himself and to Crawford.

### B.  Manner and Means of the Scheme

10.  The manner and means by which the defendant carried out the scheme included, but were not limited to, the following:

   a.  WARE prepared special payments in the names of legitimate VA beneficiaries and inserted his own banking information to cause the payments to be direct-deposited into his personal bank account.

   b.  WARE prepared special payments in the names of legitimate VA beneficiaries and inserted Crawford's banking information to cause the payments to be direct-deposited into Crawford's personal bank accounts.

   c.  WARE directed Crawford to kick back to WARE a portion of the special payments that WARE caused to be paid to Crawford.

### C.  Acts in Furtherance of the Scheme

11.  WARE prepared special payments in the names of multiple veterans who were receiving regular VA disability benefits but used his own banking information to have the

payments directly deposited into his personal bank account (PNC Bank account number XXXXXX9335).

12. On eight occasions, between on or about September 19, 2013, and on or about May 1, 2014, WARE wired himself a total of $21,029.81 in VA disability benefit money.

13. In or around October 2014, Crawford spoke with WARE by telephone and told him that she was having financial difficulties. WARE responded that he could send her VA hardship money if she provided her banking information. Crawford asked WARE if they could "get in trouble," and WARE told Crawford that they would not. Crawford agreed to take the money. Crawford did not complete any paperwork in order to receive these special payments from WARE but provided her bank account information to WARE.

14. On seven occasions, between on or about October 29, 2014, and on or about February 11, 2015, WARE wired Crawford a total of $45,917.45 in VA disability benefit money.

15. WARE directed Crawford to kick back a portion of the payments she received to him. Specifically, after Crawford received the first two VA special payments sent by WARE, Crawford and WARE spoke again by telephone. During their conversation, WARE told Crawford that he too was having financial difficulties and asked her to send him a portion of the payments that she was receiving at his direction. Crawford agreed to this arrangement.

16. On or about December 10, 2014, Crawford began wiring a portion of the VA special payments she received back to WARE. Crawford arranged for most of these payments to WARE to be wired via Walmart2Walmart money grams, which allowed WARE to pick up the money at any Walmart store in the country. Most of these payments were in the amount of $900, the maximum amount allowed by Walmart, and occurred within a day or two after Crawford received

the VA special payments from WARE. When sending the money to WARE, Crawford always identified the recipient as "Russel Ware."

17. Between on or about December 10, 2014, and on or about April 8, 2015, Crawford sent WARE sixteen payments, totaling $13,100.

18. WARE took steps to hide, conceal, and cover up his activity and the nature and scope of his misconduct, including:

    a. Preparing special payments in the names of legitimate VA beneficiaries but using his own or Crawford's banking information so that the payments would be sent to himself or to Crawford, respectively;

    b. Directing the payments to himself without preparing an electronic payment voucher in his name or completing any paperwork;

    c. Directing the payments to Crawford without preparing an electronic payment voucher in her name or having her complete an application or any other paperwork;

    d. Matching the amounts of the payments sent to himself and to Crawford to the exact amounts of legitimate payments to other veterans;

    e. Exploiting the fact that the AMC authorizer of a special payment did not have a historical view of past payments and therefore could not verify that the payment was to be deposited into the same bank account where the recipient regularly received his or her recurring VA benefits; and

    f. Falsely claiming to federal agents that he did not recognize Crawford's name.

D. **Execution of the Scheme**

19. On or about each of the dates set forth below, in the District of Columbia and elsewhere, WARE, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below; that is, WARE caused unauthorized payments to be wired to his personal bank account and to various bank accounts held by Crawford, including payments in the amounts listed below:

| **Count** | **Schedule Date** (on or about) | **Amount of Payment** | **Final Recipient** |
|---|---|---|---|
| 1 | September 16, 2013 | $2,586.00 | WARE- PNC Bank (XXXXXX9335) |
| 2 | May 1, 2014 | $3,554.53 | WARE- PNC Bank (XXXXXX9335) |
| 3 | November 5, 2014 | $6,674.64 | Crawford- NFCU (XXXXXX4942) |
| 4 | February 11, 2015 | $5,476.80 | Crawford- NFCU (XXXXXX4942) |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
**(Bribery - 18 U.S.C. § 20l (b)(2))**

20. The allegations contained in paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

21. From in or about October 2014, and continuing through in or about April 2015, in the District of Columbia and elsewhere, the defendant,

**RUSSEL M. WARE**,

being a public official, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally in return for being influenced in the performance of any official act, being influenced to commit and aid in committing and collude in

a fraud on the United States, and being induced to do an act in violation of his official duty; that is, WARE demanded, sought, received, and accepted $13,100 from Crawford in exchange for directing $45,917.45 of VA special payments to Crawford.

All in violation of Title 18, United States Code, Section 201(b)(2).

## COUNT SIX
### (Theft of Government Property - 18 U.S.C. § 641)

22.  The allegations contained in paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

23.  From in or about September 2013, and continuing through in or about February 2015, in the District of Columbia and elsewhere, the defendant,

**RUSSEL M. WARE**,

did willfully and knowingly embezzle, steal, purloin, and convert to his use and the use of another more than $1,000 of money of the United States; that is, $66,996.26 in VA special payments.

All in violation of Title 18, United States Code, Section 641.

## FORFEITURE NOTICE

The allegations contained in paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

Pursuant to Federal Rule of Criminal procedure 32.2(a), the defendant,

**RUSSEL M. WARE**,

is notified that, upon conviction of the offenses alleged in Counts One (1) through Six (6) of this Indictment, he shall forfeit to the United States of America any property, real or personal, which he obtained directly or indirectly and which constitutes or is derived from proceeds traceable to

the offenses of conviction. Property subject to forfeiture includes, but is not limited to, approximately $66,996.26, representing the total amount of proceeds traceable, directly or indirectly, to the offenses in violation of Title 18, United States Code, Sections 201(b), 641, and 1343.

If, as a result of any act or omission of the defendant, any of the property subject to forfeiture:

        (a) cannot be located upon the exercise of due diligence;

        (b) has been transferred or sold to, or deposited with, a third party;

        (c) has been placed beyond the jurisdiction of the Court;

        (d) has been substantially diminished in value; or

        (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code , Section 2461(c), and Title 18, United States Code, Section 962(b), both incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of substitute property or a money judgment up to the value of the property subject to foreclosure.

                                                A TRUE BILL

                                                _____

                                                Foreperson

ANNALOU TIROL
Acting Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

_____
RICHARD B. EVANS
REBECCA MOSES
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice